1  TRACY L. WILKISON
   Acting United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN R. WELK
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  VICTOR A. RODGERS
   California Bar No. 101281
6  Assistant United States Attorney
   Asset Forfeiture Section
7       Federal Courthouse, 14th Floor
        312 North Spring Street
8       Los Angeles, California 90012
        Telephone: (213) 894-2569
9       Facsimile: (213) 894-0142
        E-mail: Victor.Rodgers@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                    WESTERN DIVISION

15 UNITED STATES OF AMERICA,          Case No. 2:21-CV-00788

16          Plaintiff,                COMPLAINT FOR FORFEITURE

17              v.                    18 U.S.C. § 981(a)(1)(A) and (C)
                                      and 21 U.S.C. § 881(a)(6)
18 $180,000.00 IN U.S. CURRENCY
   SEIZED FROM ONE SAFE DEPOSIT BOX   [DEA]
19 AT EAST WEST BANK AND
   $113,272.00 IN U.S. CURRENCY,
20
           Defendants.
21

22

23

24

25

26      Plaintiff United States of America brings this claim against

27 defendants $180,000.00 In U.S. Currency Seized From One Safe Deposit

28

Box At East West Bank and $113,272.00 In U.S. Currency (collectively, the "defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.    Plaintiff United States of America brings this in rem forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and 21 U.S.C. § 881(a)(6).

2.    This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4.    The plaintiff in this action is the United States of America.

5.    The defendants in this action were seized during the execution of State of California search warrants and are:

(i)  $180,000.00 In U.S Currency Seized From One Safe Deposit Box At East West Bank, which funds were seized at East West Bank, 200 East Duarte Road in Arcadia, California on or about July 17, 2020 from safe deposit box # 1026 leased by Shi Ying Huang; and

(ii) $113,272.00 in U.S. Currency, which funds were seized on or about July 16, 2020 and consist of $105,553.00 seized at an El Monte, California residence portions of which were occupied by Guoxin Wu or Eddie Nguyen and $7,719.00 seized at an Anza, California residence occupied by Guoxin Wu, Jishou Wu and Shi Ying Huang.

6.    The defendants are currently in the custody of the United States Marshals Service in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

1        7.      The interests of Guoxin Wu, Jishou Wu, Shi Ying Huang and
2    Eddie Nguyen may be adversely affected by these proceedings.

3                            BASIS FOR FORFEITURE

4    Background Of The Investigation

5        8.      During July 2020, law enforcement officers were conducting
6    an investigation pertaining to illegal activity being conducted at a
7    residence in El Monte, California.  Officers obtained a State of
8    California search warrant for the El Monte, California residence,
9    which warrant included the main residence occupied by a relative of
10   Guoxin Wu and the detached garage at that location occupied (as
11   discussed below) by Guoxin Wu.

12           Execution Of Search Warrant At El Monte, California Residence

13       9.      On July 16, 2020, officers executed the search warrant at
14   the El Monte, California residence.  When officers searched the
15   detached garage area of the residence, officers found Guoxin Wu and
16   noticed that the detached garage had been converted into living
17   quarters.  In addition, officers found in the garage several indicia
18   of an illegal marijuana cultivation operation, including several
19   ultraviolet lights and ballasts, which are items commonly used by
20   marijuana cultivators in growing marijuana at the marijuana
21   cultivation sites.  Also, officers also found in the garage a timer
22   for ultraviolet lights and ballasts.  Timers are used at illegal
23   marijuana cultivation sites because marijuana cultivators frequently
24   do not reside at the location of the marijuana grow, because they
25   fear being caught by law enforcement and, in their absence from the
26   marijuana grow location, rely on timers to run the electrical systems
27   at the marijuana cultivation site.  Officers also found in the garage
28

1  a money counter, and money counters are often used by illegal

2  narcotic traffickers to count money they receive from selling drugs.

3       10.   In addition, officers found in the garage $105,553.00 in

4  U.S. Currency (i.e., part of the defendant $113,272.00 In U.S.

5  Currency), consisting of $76,200.00 situated in a suitcase in the

6  closet, $9,353.00 housed in a backpack and $20,000.00 situated in a

7  handbag in the closet.  The $105,553.00 contained numerous indicators

8  of narcotic trafficking, including that some of the funds were

9  bundled, rubber-banded, stacked and in denominations consistent with

10 narcotic trafficking.  As to the currency denominations, the funds

11 consisted of 1,036 one hundred dollar bills, 11 fifty dollar bills,

12 60 twenty dollar bills, 19 ten dollar bills, 2 two dollar bills and 9

13 one dollar bills.

14      11.   Moreover, officers found additional indicia of narcotics

15 trafficking during the search of the garage, including eighteen money

16 orders in $500.00 and $1,000.00 denominations.  Money orders are

17 often used by persons engaged in narcotics trafficking, in an effort

18 by the traffickers to conceal their transactions in a form other than

19 cash.  In addition, a state-certified, narcotic detection canine

20 alerted to the $105,553.00, which signifies that the funds had

21 recently been in close proximity to narcotics.

22      12.   Officers spoke with Guoxin Wu, who told officers that he

23 (Guoxin Wu) was the sole occupant of the detached garage area.  In

24 addition, Guoxin Wu told officers that he stayed in the garage often

25 when he (Guoxin Wu) was not staying at his (Guoxin Wu's) primary

26 residence in Anza, California.  Officers found a mortgage statement

27 in the garage that verified Guoxin Wu's additional Anza, California

28

4

1  residence, because the mortgage statement provided that Guoxin Wu was

2  the mortgagee for the residence.

3      13.   Guoxin Wu's additional statements to officers further

4  revealed that he lacked sufficient sources of legitimate income to

5  justify his acquisition and possession of the $105,553.00.   When

6  officers asked Guoxin Wu questions regarding his financial condition,

7  Guoxin Wu told officers the following.

8      14.   For approximately the last preceding two years, Guoxin Wu

9  had lived in the garage and had paid $500.00 per month in rent.   In

10  addition to his rent, Guoxin Wu's other monthly expenses included

11  $800.00 for a car payment, $300.00 for food and groceries and $100.00

12  for telephone charges.

13      15.   As far as Guoxin Wu's income was concerned, Guoxin Wu

14  described himself as self-employed in the field of construction.

15  However, Guoxin Wu had no contractor's license nor any evidence that

16  reflected his performance of construction work, and officers found no

17  pay stubs or other evidence of this work.   In addition, while Guoxin

18  Wu stated that he had been in construction for approximately one

19  year, Guoxin Wu claimed that he did not know either his monthly or

20  annual income.   Furthermore, Guoxin Wu specifically stated that he

21  had no other form of income, noting that he had not received any

22  money from a settlement, a recent sale or government assistance.

23  Guoxin Wu also stated that he had been employed during 2018 and 2019

24  by a company called Golden Tree that conducted a legal marijuana grow

25  business, but that he was not currently involved in the marijuana

26  cultivation business.

27      16.   Guoxin Wu also disclaimed any knowledge of or ownership

28  interest in the $105,553.00 officers found in the garage.   In fact,

1   Guoxin Wu signed separate disclaimers of ownership of currency,

2   pursuant to which Guoxin Wu stated that he was not the owner of the

3   currency and did have any legal interest in the funds.  Moreover,

4   Guoxin Wu stated in the disclaimers that the owner of the currency

5   was unknown.  Furthermore, Guoxin Wu also stated in one of the

6   disclaimers that he was signing the disclaimer freely and

7   voluntarily, that no threats, promises or force had been used against

8   him to get Guoxin Wu to sign the disclaimer, and that he was giving

9   up any right he may have otherwise possessed to receive notice of any

10  forfeiture proceedings relative to the funds or to contest the

11  forfeiture of the funds.

12      17.  Despite the disclaimer's clear and unequivocal

13  representations of Guoxin Wu's lack of ownership of the funds,

14  averment that Guoxin Wu made no claim for the return of the funds and

15  relinquishment of any right Guoxin Wu may have otherwise possessed to

16  oppose forfeiture of the funds, Guoxin Wu in late October 2020

17  submitted a claim opposing forfeiture in the federal government

18  administrative forfeiture proceedings that precede the filing of a

19  judicial forfeiture action against seized currency.  Notwithstanding

20  the fact that Guoxin Wu's disclaimer of ownership expressly and

21  clearly provided otherwise, Guoxin Wu stated under penalty of perjury

22  in the claim that he owned the $105,553.00 in U.S. Currency.

23      <u>Execution of Search Warrant At Anza, California Residence</u>

24      18.  On July 16, 2020, officers also executed a State of

25  California search warrant at the Anza, California residence, and

26  found that a large-scale indoor and outdoor illegal marijuana

27  cultivation operation was being conducted at that location.  Officers

28  found that the outdoor facilities had been prepared for marijuana

1   cultivation with lighting and irrigation systems.  In connection with

2   the outdoor facilities, officers found that the outdoor marijuana

3   plants had already been harvested and processed into twelve pounds of

4   processed marijuana buds.  Officers also found indoors at the

5   residence approximately one hundred ninety two rooted marijuana

6   plants.  In addition, officers located other marijuana cultivation

7   indicators at the site, including one shotgun and one firearm

8   registered to Guoxin Wu, and ammunition in various calibers and

9   brands.

10        19.  In the north bedroom behind the bedroom door, officers

11   located a Michael Kors bag.  Inside the bag, officers found $7,719.00

12   in U.S. currency (i.e., the remainder of the defendant $113,272.00 In

13   U.S. Currency), and a wallet containing a California identification

14   card for Shi Ying Huang.  The $7,719.00 contained indicia of narcotic

15   trafficking, including that the funds were rubber banded and

16   consisted of the narcotic trafficking currency denominations of 1

17   fifty dollar bill, 368 twenty dollar bills, 30 ten dollar bills, 1

18   five dollar bill and 4 one dollar bills.

19        20.  Officers also found inside the Michael Kors bag a yellow

20   envelope that housed two safe deposit box keys marked "Box 1026," for

21   a safe deposit box at East West Bank.  Narcotic traffickers often

22   keep currency in safe deposit boxes, instead of depositing the funds

23   into bank accounts, in an effort to avoid detection by law

24   enforcement of the revenues narcotic traffickers have received from

25   illegal drug sales.

26        21.  Jishou Wu (Guoxin Wu's father) and Shi Ying Huang (Guoxin

27   Wu's mother) resided at the Anza, California residence and were

28   present during the search.  Officers spoke with Jishou Wu, who stated

1 that he resided at the Anza residence, and that his son Guoxin Wu

2 owned the residence.  In addition, Jishou Wu stated that he (Jishou

3 Wu) knew about the marijuana cultivation operation being conducted at

4 the residence, but claimed that the marijuana belonged to a friend.

5 However, Jishou Wu did not tell officers the name of the alleged

6 friend who owned the marijuana grown at the residence.

7      22.   Officers also spoke with Guoxin Wu's mother Shi Ying

8 Huang, who stated that she resided at the Anza residence, which was

9 owned by her son Guoxin Wu, with Jishou Wu and Guoxin Wu.  In

10 addition, Shi Ying Huang stated that she was semi-retired and

11 received income through her spouse Jishou Wu's work as a handyman.

12 With respect to the marijuana cultivation business at the Anza

13 residence, Shi Ying Huang stated that it was her son's business and

14 that she (Shi Ying Huang) occasionally helped with the business when

15 Guoxin Wu was not around.  In addition, Shi Ying Huang told officers

16 that Guoxin Wu occasionally provided her money for living expenses,

17 and that Guoxin Wu had given her the $7,719.00 officers had found.

18      23.   When officers asked Shi Ying Huang about the contents of

19 the safe deposit box, Shi Ying Huang provided officers with multiple

20 stories and became nervous and evasive when speaking with officers on

21 the subject.  First, Shi Ying Huang stated that she owned a safe

22 deposit box at East West Bank, but claimed that she only kept jewelry

23 within the safe deposit box.  However, when officers told Shi Ying

24 Huang that officers would be obtaining and executing a search warrant

25 on the safety box, Shi Ying Huang recanted her initial story.

26      24.   Shi Ying Huang next told officers that she estimated that

27 the safe deposit box contained approximately $100,000.00.  When

28 officers asked how Shi Ying Huang had earned and saved that much in

8

1  bulk U.S. currency, Shi Ying Huang stated that she had accumulated

2  that amount from savings as a result of her working for approximately

3  twenty years.  Officers asked Shi Ying Huang why, if Shi Ying Huang

4  possessed a bank account (which she did at East West Bank) wouldn't

5  Shi Ying Huang deposit the income into a bank account rather than

6  store the currency in a safe deposit box, to which Shi Ying Huang

7  replied by referring to a mistrust in the government.

8      25.  When officers then asked Shi Ying Huang whether she was

9  capable of providing proof of lawfully earning the approximately

10  $100,000.00 she estimated was within the safe deposit box, Shi Ying

11  Huang replied that she was not sure.  Shi Ying Huang then changed her

12  story again, and claimed that the source of the currency inside the

13  safe deposit box was gifts from her friends and family.

14      26.  Officers asked Shi Ying Huang whether she had been given

15  money by Guoxin Wu to be placed in the safe deposit box, and Shi Ying

16  Huang stated that Guoxin Wu had done so.  However, apparently

17  believing that her criminal culpability was reduced if the Guoxin Wu-

18  provided funds were given for living expenses rather than for other

19  purposes (such as for the purchase of non-essential items), Shi Ying

20  Huang stated that Guoxin Wu had given her currency to place in the

21  safe deposit box for living expenses only.

22      Execution Of Search Warrant On East West Safe Deposit Box

23      27.  On July 17, 2020, officers executed a State of California

24  search warrant on safe deposit box number 1026 at East West Bank.

25  Officers had a state-certified, narcotic detection canine sniff safe

26  box number 1026, and the canine alerted thereto, which signifies that

27  safe deposit box number 1026's contents had recently been in close

28  proximity with controlled substances.

9

28.   The safe deposit box was then opened, and officers did not find a total of $100,000.00 (as Shi Ying Huang had claimed) but instead found a total of $180,000.00 in U.S. currency (i.e., the defendant $180,000.00 In U.S Currency Seized From One Safe Deposit Box At East West Bank).  The funds bore indicia of narcotic trafficking, including that the funds were in the following denominations that are consistent with narcotic trafficking:  1,762 one hundred dollar bills, 74 fifty dollar bills and 5 twenty dollar bills.

29.   In addition, the bank's assistant manager told officers that customers depositing any monies in excess of $10,000.00 were required to show that the funds were legally derived.  Accordingly, by storing the $180,000.00 in the safe deposit box, the lessee of the box (Shi Ying Huang) had circumvented the requirement to prove the funds were legally derived.

30.   Shi Ying Huang in late October 2020 submitted a claim opposing forfeiture in the federal government administrative forfeiture proceedings that she owned the $7,719.00 and $180,000.00 because she earned it.  This statement, made under penalty of perjury, conflicts with statements she made to officers on July 16, 2020.

### State-Certified Narcotic Detection Canines

31.   As mentioned in paragraph 11 above, a trained, state-certified narcotic detection canine alerted to $105,553.00 found in the garage at the El Monte residence, which signifies that those funds had recently been in close proximity with narcotics.  As of the alert on July 16, 2020, the canine had received hundreds of hours of training (including weekly training after the canine's initial

1  November 2016 certification) in the detection of controlled substance

2  including cocaine, methamphetamine, ecstasy and heroin, and the

3  canine alerts to the scent of narcotics for which the canine is

4  trained.  The canine's training has included routinely checking both

5  circulated and uncirculated United States currency, in order to

6  ensure that the canine does not alert to the actual odor of currency

7  itself but instead to the odor of controlled substances on the

8  currency.  Since November 2016, the canine has been responsible for

9  the location and seizure of controlled substances and United States

10 currency.

11      32.   As mentioned in paragraph 27 above, a trained, state-

12 certified narcotic detection canine alerted on the safe deposit box

13 number 1026 at East West Bank that housed the $180,000.00 in U.S.

14 currency, which signifies that the funds had recently been in close

15 proximity with narcotics.  As of the July 17, 2020 alert, the canine

16 had received hundreds of hours of training (including training after

17 the canine's initial 2016 certification) in the detection of cocaine,

18 methamphetamine, marijuana and heroin, and the canine alerts to the

19 scent of narcotics for which the canine is trained.  The canine's

20 training has included routinely checking both circulated and

21 uncirculated United States currency, in order to ensure that the

22 canine does not alert to the actual odor of currency itself but

23 instead to the odor of controlled substances on the currency.  In

24 addition, the canine is recertified annually, with the last

25 recertification occurring in November 2020.  Since 2016, the canine

26 has been responsible for the location and seizure of over 500 pounds

27 of controlled substances (including methamphetamine, marijuana,

28 heroin and ecstasy) and United States currency.

11

1

FIRST CLAIM FOR RELIEF

2    33.  Plaintiff incorporates the allegations of paragraphs 1-32

3 above as though fully set forth herein.

4    34.  Based on the above, plaintiff alleges that the defendants

5 represent or are traceable to proceeds of illegal narcotic

6 trafficking, were intended to be used in one or more exchanges for a

7 controlled substance or listed chemical, or were used or intended to

8 be used to facilitate a controlled substance or listed chemical

9 violation, in violation of 21 U.S.C. § 841 et seq.  The defendants

10 are therefore subject to forfeiture pursuant to 21 U.S.C.

11 § 881(a)(6).

12

SECOND CLAIM FOR RELIEF

13    35.  Plaintiff incorporates the allegations of paragraphs 1-32

14 above as though fully set forth herein.

15    36.  Based on the above, plaintiff alleges that the defendants

16 constitute or are derived from proceeds traceable to a controlled

17 substance violation, a specified unlawful activity as defined in 18

18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D).  The defendants are therefore

19 subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

20

THIRD CLAIM FOR RELIEF

21    37.  Plaintiff incorporates the allegations of paragraphs 1-32

22 above as though fully set forth herein.

23    38.  Based on the above, plaintiff alleges that the defendants

24 constitute property involved in multiple transactions or attempted

25 transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or

26 property traceable to such property, with the specified unlawful

27 activity being a controlled substance or listed chemical violation.

28

1  The defendants are therefore subject to forfeiture pursuant to 18

2  U.S.C. § 981(a)(1)(A).

3  FOURTH CLAIM FOR RELIEF

4     39.  Plaintiff incorporates the allegations of paragraphs 1-32

5  above as through fully set forth herein.

6     40.  Based on the above, plaintiff alleges that the defendants

7  constitute property involved in multiple transactions or attempted

8  transactions in violation of 18 U.S.C. § 1957(a), or property

9  traceable to such property, with the specified unlawful activity

10  being a controlled substance or listed chemical violation.  The

11  defendants are therefore subject to forfeiture pursuant to 18 U.S.C.

12  § 981(a)(1)(A).

13     WHEREFORE, plaintiff United States of America prays:

14     (a)  that due process issue to enforce the forfeiture of the

15  defendants;

16     (b)  that due notice be given to all interested parties to

17  appear and show cause why forfeiture should not be decreed;

18     (c)  that this Court decree forfeiture of the defendants to the

19  United States of America for disposition according to law; and

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

13

1      (d)   for such other and further relief as this Court may deem

2  just and proper, together with the costs and disbursements of this

3  action.

4  Dated: January 28, 2021           TRACY L. WILKISON
                                      Acting United States Attorney
5                                     BRANDON D. FOX
                                      Assistant United states Attorney
6                                     Chief, Criminal Division
                                      STEVEN R. WELK
7                                     Assistant United States Attorney
                                      Chief, Asset Forfeiture Section

8

9                                     _____
                                      VICTOR A. RODGERS
10                                    Assistant United States Attorney
                                      Asset Forfeiture Section
11
                                      Attorneys for Plaintiff
12                                    UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                              VERIFICATION

2       I, Andrew J. Avila, hereby declare that:

3       1.     I am a Task Force Officer with the United States Drug

4 Enforcement Administration.

5       2.     I have read the above Complaint for Forfeiture and know the

6 contents thereof.

7       3.     The information contained in the Complaint is either known

8 to me personally, was furnished to me by official government sources,

9 or was obtained pursuant to subpoena. I am informed and believe that

10 the allegations set out in the Complaint are true.

11       I declare under penalty of perjury under the laws of the United

12 States of America that the foregoing is true and correct.

13       Executed on January 22, 2021 at EL MONTE, California.

14

15

16                              Andrew J. Avila

17

18

19

20

21

22

23

24

25

26

27

28